# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### DURHAM DIVISION

| | | |
|---|---|---|
| ROBYN L. GOODEN, on behalf of herself and all others similarly situated, | § § § | CIVIL ACTION NO. _____ |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| SMART ONLINE, INC., DENNIS MICHAEL NOURI, REEZA ERIC NOURI, HENRI NOURI, JEFFERY W. LEROSE, THOMAS P. FURR, MAXIM GROUP, LLC, and JESUP & LAMONT SECURITIES CORP. | § § § § § § § | **COMPLAINT – CLASS ACTION** |
| Defendants. | § § § | JURY TRIAL DEMANDED |

Plaintiff, Robyn L. Gooden, by her counsel, makes the following allegations upon information and belief based upon all of the facts set forth below which were obtained through an extensive investigation made by and through her attorneys. Plaintiff's Counsel's investigation has included, among other things, a review of: (i) public filings made by Smart Online, Inc. ("SOI" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (ii) press releases and other public statements issued by the Company; (iii) published reports and news articles regarding the Company; and (iv) pleadings and the consent judgment entered against Defendant SOI in *Securities and Exchange Commission v. Smart Online, Inc., et al*; Civil Action No. 07-7960; in the United States District Court for the Southern District of New York (the "SEC lawsuit"). Plaintiff

believes that substantial evidentiary support will exist for the allegations set forth below after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      Plaintiff Gooden brings this action as a class action on behalf of all persons other than Defendants who purchased SOI securities from May 2, 2005 through September 28, 2007, inclusive (the "Class Period"), and who were damaged thereby (the "Class"). The Class seeks remedies pursuant to the Securities Exchange Act of 1934 (the "Exchange Act").

2.      This case concerns material and misleading statements made with the intent to mislead the investing public and conspiracy on the part of Defendants to artificially inflate the market price of securities of SOI during the Class Period. As detailed herein, throughout the Class Period, SOI and its former President and Chief Executive Officer ("CEO") Michael Nouri ("Nouri") issued numerous materially false and misleading statements regarding the Company's financial performance and prospects to the investing public. These statements were made with the knowledge and encouragement of Defendants Eric Nouri, Henri Nouri, LeRose, and Furr, all of whom were officers and/or directors of SOI during the Class Period. Defendants SOI, Nouri, and Eric Nouri, a former SOI employee and Nouri's brother, bribed stock brokers employed by Defendants Maxim Group, LLC ("Maxim") and Jesup & Lamont Securities Corp. ("JLSC") to solicit customers to purchase SOI securities. These bribes were made with the intent to artificially increase the price of SOI securities and to artificially support trading volumes of SOI securities.

Further, SOI and Nouri entered into numerous sham consulting agreements to conceal payment of bribes from the investing public.

**JURISDICTION AND VENUE**

3.      The claims asserted herein are made pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

5.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b).  Defendant SOI has its principal offices in this District.  Many of the acts herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.

**PARTIES**

6.      Plaintiff purchased SOI securities during the Class Period as set forth in the certification, attached, and has been damaged thereby.

7.      Defendant SOI is a Delaware corporation which describes itself as the leading provider of software applications and tools for small businesses.  At all relevant times, SOI's principal offices were located at 2530 Meridian Parkway, 2nd Floor, Durham, North Carolina 27713.

8.      Defendant Michael Nouri is the co-founder and former President and CEO of SOI.  Nouri is a resident of Durham, North Carolina.

3

9.      Defendant Eric Nouri is a former employee of SOI and is the brother of Defendant Nouri.  Eric Nouri is a resident of Durham, North Carolina.

10.      Defendant Henri Nouri is the former Executive Vice President of SOI and is also the brother of Defendants Michael and Eric Nouri.  Henri Nouri is a resident of Durham, North Carolina.

11.      Defendant LeRose is Chairman of the Board and a Director of SOI.  He was first appointed as a Director on September 13, 2005, and has continued to serve in this position during the remainder of the Class Period.  LeRose is a resident of Cary, North Carolina.

12.      Defendant Furr is Chief Strategy Officer and a Director of SOI.  Furr became a Director in 2002 and remained a Director during the Class Period.  He formerly served as Chief Operating Office of the Company.  Furr is a resident of Durham, North Carolina.

13.      Defendant Maxim is an investment banking, securities, and money management firm.  At all relevant times, Maxim's principal offices were located at 405 Lexington Ave., New York, New York 10174.

14.      Defendant JLSC is a brokerage and investment banking firm.  At all relevant times, JLSC's principal offices were located at 650 Fifth Avenue, 3rd Floor, New York, New York 10019.

## CLASS ACTION ALLEGATIONS

15.      Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class consisting of all persons who purchased

4

SOI securities during the Class Period. Excluded from the Class are Defendants Nouri, Eric Nouri, Henri Nouri, LeRose, Furr, Maxim and JLSC, all officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which Defendants have a controlling interest.

16. The members of the Class are so numerous that joinder of all members is impracticable. As of October 11, 2007, SOI had approximately 43.9 million shares of common stock outstanding. Throughout the Class Period, SOI securities were actively traded on the OTC Bulletin Board. While the exact number of Class members is unknown, Plaintiff believes that there are thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by SOI or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions..

17. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

18. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel who is competent and experienced in securities class action litigation.

19. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting individual members of the Class. Among these common questions of law and fact are:

(a)     whether Defendants violated federal securities laws as set forth herein;

(b)     whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the Company's risks associated with fraudulent and criminal conduct on the part of its former CEO, Defendant Nouri, and its employees and/or officers, Defendants Eric and Henri Nouri,

(c)     whether Defendants failed to disclose material information concerning the fraudulent and criminal conduct on the part of Defendants Michael, Eric, and Henri Nouri;

(d)     to what extent members of the Class sustained damages; and

(e)     the proper measure of damages.

20.     A class action is superior to all other available methods for fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually seek redress for such wrongs.  A class action is the most economical method for these parties to enforce their legal rights.

## FACTS

21.     At all relevant times, SOI provided a private-label syndicated online business platform that enables on-demand Web delivery of applications and services to small businesses with less than 50 employees.  According to SOI, its products automate and streamline business processes, reduce operating costs, and improve internal controls.  SOI

markets its business applications to customers by private labeling. The Company targets financial services, retail, media, and telco industries in its marketing efforts.

22. SOI stock began trading on the OTC Bulletin Board in April 2005. SOI and its then-CEO, Defendant Nouri, sought to qualify the company for listing on the NASDAQ National Market ("NASDAQ") by increasing the number of shareholders and trading volume of the Company's stock. To this end, Defendants Nouri and Eric Nouri, with the knowledge and consent of Defendants Henri Nouri, LeRose, and Furr, entered into a scheme whereby SOI, by and through certain of its officers and directors, paid bribes to certain stock brokers to solicit customers to purchase SOI stock. Upon information and belief, Defendants Maxim and JLSC participated in the scheme through certain employee stock brokers and benefited by charging fees and sales charges to unsuspecting customers.

23. Upon information and belief, from May 2005 through January 2006, at least $170,000 in bribes were paid to stock brokers employed by Defendants Maxim and JLSC. During this same time frame, Defendants Maxim and JLCS solicited purchases of at least 267,000 SOI shares from unsuspecting investors, generating massive fees. This trading volume amounted to approximately ten percent of the entire trading volume for SOI securities during the May 2005 through January 2006 time period.

24. Upon information and belief, Defendant Nouri wanted to increase the daily trading volume of SOI stock from approximately 5,000 shares per day to 30,000 shares per day in order to increase SOI's market capitalization in order to meet NASDAQ listing requirements. Upon further information and belief, Nouri also solicited bribes in order to

7

increase the number of SOI shareholders. Nouri's goal was to enlist a minimum of 400 record shareholders.

25.     To further these ends, Defendant Nouri, agreed to pay $1000 in bribes to every stock broker who sold 1,000 shares of SOI stock. To conceal the bribes, SOI and Nouri entered into sham consulting agreements with one or more of the stock brokers.

26.     Defendants SOI, Nouri, Maxim and JLSC failed to disclose the true nature of the stock brokers' arrangement to the investing public.

27.     Ultimately, on January 10, 2006, SOI filed a Form 8-K with the SEC announcing that its stock was approved for trading by NASDAQ and that the first day of trading was anticipated to be January 17, 2006. However, on January 17, 2006, the SEC suspended trading of SOI stock. As a result of the suspension, NASDAQ withdrew its acceptance of SOI's application. Further, the SEC notified brokers and dealers that they were prohibited from directly or indirectly offering quotations on SOI stock unless they have strictly complied with Rules 15c2-11. SOI's stock remained suspended from trading until September 11, 2006, when it resumed trading on the OTC Bulletin Board.

28.     On January 17, 2006, SOI issued a press release announcing the suspension in trading of its stock. It subsequently filed a Form 8-K with the SEC to this same effect, which also stated that there was possible manipulative conduct occurring in the market for the Company's stock. The Company failed to advise the investing public by either its SEC filing or by press release that it and one or more of its officers and directors had bribed stock brokers with the intent to increase trading volume of SOI stock.

29.    In its Form 10-K Annual Report (for fiscal year 2005) filed with the SEC on July 11, 2006, SOI announced for the first time that its Board had authorized its Audit Committee to conduct an internal investigation of matters relating to the SEC suspension and investigation in March 2006. The Audit Committee's findings, as well as those of an independent outside legal counsel, were shared with the Board on July 7, 2006. The Company issued this statement concerning the same:

> Audit Committee Internal Investigation of Matters Related to the SEC Suspension and Investigation. In March 2006, our Board of Directors authorized its Audit Committee to conduct an internal investigation of matters relating to the SEC suspension and investigation. The Audit Committee retained independent outside legal counsel to assist in conducting the investigation. On July 7, 2006, the independent outside legal counsel shared final findings with the Audit Committee, which were then shared with the full Board of Directors. The Audit Committee did not conclude that any of our officers or directors have engaged in fraudulent or criminal activity. However, it did conclude that we lacked an adequate control environment, and has taken action to address certain conduct of management that was revealed as a result of the investigation. The Audit Committee concluded that the control deficiencies primarily resulted from our transition from a private company to a publicly reporting company and insufficient preparation for, focus on and experience with compliance requirements for a publicly reporting company. As one of the results of these findings, Mr. Jeffrey LeRose was appointed to the position of non-executive Chairman of the Board of Directors to separate the leadership of the Board of Directors from the management of the Company, which is a recommended best practice for solid corporate governance. Mr. Nouri has stepped down as Chairman of the Board of Directors, but will continue to serve as our president, chief executive officer and as a member of the Board of Directors.

See **Form 10-K**, filed July 11 2006, at p. 42.

30.    In its 2005 Annual Report SOI stated that its Audit Committee did not conclude that any of SOI's officers or directors had engaged in fraudulent or criminal

conduct. However, the report stopped short of full disclosure with regard to Defendants Michael and Eric Nouri's known sham consulting agreements, which served as vehicles for the payment of bribes to brokers employed by Defendants Maxim and JLSC. Upon information and belief, Defendants Henri Nouri, LeRose, and Furr were made aware of the sham consulting agreements and resulting bribes.

31. Under the heading "investor relations expenses" in its 2005 Annual Report, the Company stated that it had entered into agreements for investor relations services with certain stockholders, including Ruben Serrano. The Company reported paying Serrano $23,500 in cash and 2,000 shares of stock for his services.

32. In subsequent public filings, including its Form 10-Q filed on August 2, 2006, the Company reported additional changes following the Audit Committee investigation which had been previously conducted. Namely, a new Chief Financial Officer was appointed and the company began negotiating settlement agreements with several companies with whom it had entered into consulting contracts, including GIC and Berkley Financial Services. However, there was no mention of the contract with Serrano being terminated. Clearly, as of this date, SOI had conducted a thorough review of its consulting agreements and, nonetheless, failed to disclose that Serrano's contract was a sham consulting agreement. Likewise, SOI choose not to take action against Serrano for a refund of the bribe monies which he had been paid.

33. On September 11, 2006, SOI's stock resumed trading on the OTC Bulletin Board. In a press release issued by SOI on the same date, Defendant Nouri stated:

We are very pleased to again be listed on the Bulletin Board and would like to thank our shareholders for their support through the last few quarters. We believe this step is an important accomplishment in light of the Securities and Exchange Commission's suspension of our trading in January 2006 and our Audit Committee's independent investigation. As we continue to focus on improving our controls and procedures and on building the leading on-demand small business applications to build a strong company, I also would like to commend our employees whose energy and dedication have been an essential part of bringing us to this point.

Notwithstanding this statement, SOI was aware that it had not taken all necessary steps to inform the investing public of material and relevant facts, and, indeed, had withheld relevant facts from the investing public.

34.     Thereafter, in subsequent public filings, including its Form 10-Q filed on August 17, 2007, SOI identified certain Regulatory Risks and made disclosures about market risks, including remediation of deficiencies in its internal control over financial reporting.  Among other things, the Form 10-Q revealed additional data from the July 2006 Audit Committee investigation, including:

(a)     the CEO, Defendant Nouri, should have disclosed and sought approval from the Board before entering into certain transactions and arrangements, including personal loans;

(b)     inadequate diligence by management and the Board regarding third parties with which SOI contracted, including outside investor relations vendors, some of which were registered brokers;

(c)     management and directors lacked sufficient knowledge regarding rules and regulations with respect to dealings between registered brokers and public companies;

(d)     the lack of clear policies regarding the limits on the CEO's authority to enter into business transactions and agreements without Board approval;

(e)     inadequate legal and accounting review of material contracts;

(f)     inadequate training and understanding of SEC disclosure requirements;

(g)     an unintentional violation of the Company's Securities Trading Policy by a Director;

(h)     inadequate processes for determination of independence of Board members; and

(i)     a failure to communicate and stress the importance of controls and procedures throughout the organization.

35.     As a result of the foregoing findings, the Company instituted the following changes to its internal controls:

(a)     Defendant LeRose was appointed to the position of non-executive Chairman of the Board to separate the leadership of the board from the management of the Company, replacing Defendant Nouri, who remained as President, CEO and a Director;

(b)     Defendant Nouri repaid all amounts outstanding to several shareholders, including Berkley Financial Services, through sale of shares of common stock from Nouri's personal holdings;

(c)     The Company's Chief Financial Officer ("CFO") has been involved in communications with investment professionals, including analysts, brokers and potential institutional investors;

(d)     The Company's CFO has been given direct reporting responsibility to the Audit Committee with respect to any such communications;

(e)     Three additional, non-management directors have been appointed to our Board, two of whom qualify as "independent" under Item 407(a) of Regulation S-K.  One of these "independent" directors also qualifies as an "audit committee financial expert" under Item 407(d)(5)(ii) of Regulation S-K and is serving as the Chairman of the Audit Committee;

(f)     SOI's outside counsel has provided periodic educational training for management and directors;

(g)     The Company adopted a revised Securities Trading Policy;

(h)     Controls were implemented regarding the review and approval of material contracts by the CFO, Corporate Counsel, and where appropriate, outside counsel and the Board, including the creation of a contract checklist to be completed by the CFO and corporate counsel for each material agreement;

(i)     The Company instituted a program requiring written confirmation of compliance with its Code of Ethics and Conflicts of Interest Policy on a quarterly basis from all members of management and the Board;

(j)     The Company entered into a contract with Ethical Advocates, Inc. for confidential and anonymous incident reporting;

(k)     Multiple control systems were put in place to review checks paid to officers and directors in excess of $2500; and

(l)     There are three Directors who are members of the National Association of Corporate Directors.

Further, the Company reported that it had tested and found the above referenced changes, with the exception of (f), (g) and (i), effective as of the end of the second quarter of its fiscal year 2007.

36.     Within the same filing, SOI identified the severe risk associated with loss of key officers and directors, noting that its executive management team was critical to the execution of its business plan and that the loss of their services could impact very negatively on SOI's business.

37.     25 days later, on September 11, 2007, Defendants Michael Nouri and Eric Nouri were charged with federal securities fraud and conspiracy to commit securities fraud. The Company immediately issued a press release regarding the criminal charges, which reiterated the steps taken in response to the 2006 Audit Committee investigation and

announced that Defendant Nouri had resigned his employment. Thereafter, SOI terminated the employment of Defendant Nouri's brothers, Defendants Eric and Henri Nouri.

38.     Thereafter, the SEC lawsuit was filed, charging Defendants SOI, Michael Nouri, Eric Nouri, Anthony Martin, James Doolan, Ruben Serrano, and Alain Lustig with civil violations of the Section 17(a) of the Securities Act, violations of Section 10(b) of the Exchange Act, and violations of Rule 10b-5 in connection with SOI's payments of bribes to Martin, Doolan, Serrano, and Lustig, among others.

39.     On September 28, 2007, SOI consented to entry of a Final Judgment in the SEC lawsuit and announced the same to the public in a press release.

40.     As of May 2, 2005, SOI's stock closed at $6.39 per share. As of September 28, 2007, when SOI entered into the consent judgment in the SEC lawsuit and revealed its wrongdoing to the investing public, SOI's stock plummeted to close at $1.87 per share.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

41.     At all relevant times, the market for SOI securities was an efficient market for the following reasons:

(a)     SOI's common stock met the requirements for listing, and was listed and actively traded on the OTC Bulletin Board, a highly efficient and automated market;

(b)     SOI's common stock was approved for listing on the NASDAQ, although it never traded due to the SEC suspension related to the wrongdoing alleged in this Complaint;

15

(c)     As a regulated issuer, SOI filed periodic public reports with the SEC; and

(d)     SOI regularly communicated with public investors via established market communication mechanisms, including regularly disseminated press releases on the national circuits of major newswire services, and through wide-ranging public disclosures, such as communications with securities analysts.

42.     As a result of the foregoing, the market for SOI securities promptly digested current information regarding SOI from all publicly available sources and reflected such information in the price of SOI securities.  Under these circumstances, all purchasers of SOI securities during the Class Period suffered similar injuries and the presumption of reliance applies.

## NO SAFE HARBOR

43.     The statutory safe harbor providing for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements and omissions pleaded in this Complaint.  The statements alleged to have been false and misleading were not forward-looking statements as that term is defined in the Private Securities Litigation Reform Act of 1995 or case law, and were statements concerning historical or present facts and circumstances.  Alternatively, to the extent that there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to vary materially from those in the forward-looking statements given that the materially false and misleading

statements and omissions that were made and that Defendants are liable for any such forward-looking statements, because, at the time they were made, the speaker knew that the statement was false.

## COUNT I:

## VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 AGAINST ALL DEFENDANTS

44. Plaintiff incorporates each and every allegation above as if set forth herein.

45. During the Class Period, SOI, Maxim, JSLC, and the Individual Defendants carried out a plan, scheme, and course of conduct which was intended to and did: (a) deceive the investing public, including Plaintiff alleged herein; (b) artificially create and inflate market prices of SOI's securities; (c) artificially create and inflate the trading volume of SOI's securities; and (d) cause Plaintiff and other Class members to purchase or otherwise acquire SOI securities at artificially inflated prices.

46. As senior officers and/or directors of SOI, Defendants Michael Nouri, Henri Nouri, LeRose and Furr were responsible for the Company's compliance with legal and regulatory requirements. Michael Nouri, Henri Nouri, LeRose and Furr failed in these responsibilities.

46. In furtherance of this unlawful scheme, plan and course of conduct, Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or failed to disclose material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of SOI securities in an effort to

maintain artificially high market prices and trading volume for such securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. Defendants SOI, Michael Nouri, Eric Nouri and Henri Nouri were primary participants in the wrongful conduct charged herein. Defendants Maxim and JLSC participated in and benefited from the wrongful conduct by generating massive fees from unsuspecting investors. Thus, Defendants Maxim and JLSC is directly liable to Plaintiff and the Class for their knowing participation in the fraudulent scheme, course of conduct, and course of business of SOI, which contributed to false and misleading statements in SOI's SEC filings, as well as helped to artificially inflate the trading price of SOI stock.

47.     In addition to the duties of full disclosure imposed on Defendants SOI and Michael Nouri as a result of their making affirmative statements and reports, or participating in the making of affirmative statements and reports to the investing public, Defendants SOI, Michael Nouri, Henri Nouri, LeRose and Furr had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC as set forth in SEC Regulation S-X, 17 C.F.R. Sections 210.01 *et seq*., and Regulation S-K, 17 C.F.R. Sections 229.10 *et seq*., and other SEC regulations.

48.     Defendants acted individually and in concert by the use, means and instrumentalities of interstate commerce, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of the Company, as set forth herein.

49.     Defendant Michael Nouri's liability arises from the following facts:   (i) Nouri was a high level executive and director at the Company during the Class Period; (ii) by virtue of his responsibilities and activities as President, CEO, and Chairman of the Board of SOI, he was privy to true undisclosed facts and participated in the creation, development and reporting of the Company's materially false and misleading statements; (iii) he created, with the assistance of all other Defendants, sham consulting agreements as vehicles through which he and Defendants Henri and Eric Nouri paid bribes to employees of Defendants Maxim and JLSC, and failed to disclose or intentionally misrepresented these actions to the investing public; (iv) he disseminated false and misleading information to the investing public regarding these consulting agreements, or was aware that the Company disseminated false and misleading information to the investing public regarding these consulting agreements; (v) he entered into said consulting agreements with the intent to deceive the investing public; and (vi) he, with the assistance of all other Defendants, caused bribes to be paid to stock brokers with the intent to deceive the investing public as to the value of SOI securities.

50.     The remaining Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Defendant SOI's material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose of supporting the artificially inflated price of SOI securities and trading volume.

51.     As a result of the dissemination of materially false and misleading information and failure to disclose material facts, as set forth above, the market price of SOI securities was artificially inflated during the Class Period.  Without knowledge of the fact that market prices of SOI publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants SOI and Michael Nouri, Plaintiff and other members of the Class acquired SOI stock during the Class Period at artificially high prices and were damaged thereby.

52.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class had no knowledge the statements were false and believed them to be true.  Had Plaintiff and other members of the Class and the marketplace known of the true facts regarding bribes paid by SOI, by and through Michael, Henri, and Eric Nouri, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their SOI common stock, or, if they had acquired such stock during the Class Period, they would not have done so at the artificially inflated prices.

53.     As such, Defendants violated Section 10(b) of the Exchange Act, and Rule 10b-5.

54.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their respective purchases and sales of SOI common stock.

55.     By and through the consent judgment entered in the SEC lawsuit,

Defendant SOI admits liability for violation of Section 10(b) of the Exchange Act and Rule 10b-5 with regard to the payment of bribes to stock brokers employed by Defendants Maxim and JLSC. Due to its misrepresentations after the payment of said bribes in its public filings, as outlined herein, Defendant SOI is liable for its conduct during the Class Period.

## PRAYER

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action and certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and,

(d)     Such other and further relief as this honorable court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury.


DATED: October 18, 2007

Respectfully Submitted,


s/Guy W. Crabtree
Guy W. Crabtree
NC 8234
Pulley, Watson, King & Lischer
PO Box 3600
Durham, NC 27702
919.682.9691
*gwc@pwkl.com*


William B. Federman
TBN 00794935
Allison B. Waters
TBN 00795994
SD TX 27568
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, OK  73120
Phone:  (405) 235-1560
Fax: (405) 239-2112
*wfederman@aol.com*

- and –

2926 Maple Avenue, Suite 200
Dallas, TX  75201
Attorneys for Plaintiff