UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF NORTH CAROLINA

---

MARY JANE BEAUREGARD, On Behalf
of Herself and All Others Similarly
Situated

                   Lead Plaintiff,

     vs.

SMART ONLINE, INC., *et al.*

                Defendants.

---

Civ. No. 07-CV-00785-WO-PTS

## MEMORANDUM IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES

S. Ranchor Harris, III
100 N. Cherry Street
Winston-Salem, NC 70447
27101-4016
Tel: 336-721-1001

*Liaison Counsel for Lead Plaintiff and the Class*

**BROWER PIVEN**
A Professional Corporation
488 Madison Avenue
New York, New York 10022
Tel: 212-501-9000

**KAHN SWICK & FOTI**
206 Covington Street
Madisonville, Louisiana 70447
Tel: 504-455-1400

*Lead Counsel for Lead Plaintiff and the Class*

# TABLE OF CONTENTS

I.   INTRODUCTION.................................................................................................1

II.  ARGUMENT ...................................................................................................4

   A.   Lead Counsel Is Entitled To An Award of Attorneys' Fees and Reimbursement of Expenses For Obtaining the Benefits Conferred on the Class ...............................4

   B.   A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases ..................................................7

   C.   Lead Counsel's Fee Request Is Reasonable Under Fourth Circuit Criteria......11

      1.   The Time and Labor Involved ......................................................................11

      2.   The Novelty and Difficulty of the Questions .................................................13

      3.   The Skill Requisite to Perform the Legal Service Properly ..........................14

      4.   The Customary Fee .......................................................................................14

      5.   Whether the Fee Is Contingent or Fixed.......................................................16

      6.   The Amount Involved and the Results Obtained...........................................18

      7.   The Experience, Reputation, and Ability of the Attorneys ...........................19

      8.   Awards in Similar Cases...............................................................................19

      9.   The Reaction of the Class Confirms that the Requested Fee Is Reasonable .21

      10.    Important Public Policy Considerations Also Support the  Requested Fee Award
         ………………………………………………………………………………
    …..22

   D.   Lead Plaintiff's Expenses Are Reasonable and Should Be Reimbursed ..........23

III. CONCLUSION ...............................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp., 572* F.3 d 221, 235 (5th Cir. 2009)....3

*Barber v. Kimbrell's,* 577 F.2d 216, 226 (4th Cir. 1978)............................................. 11

*Basic Inc. v. Levinson, 485* U.S. *224 (1988)* .................................................................. 22

*Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299 *(1985)*......................... 22

*Behrens v. Wometco Enters, Inc.,* 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899
      F.2d 21 (11th Cir. 1990) ...................................................................................... 6, 23

*Blum v. Stenson,* 465 U.S. 886, 900 n.16 (1984)........................................................ 8, 15

*Bond Litig. v. US. Trust Co. of Tex., NA.,* No. 02-ML-1475- DT (RCx), 2005 U.S.
      Dist. LEXIS 13627, at *61 (C.D. Cal. June 10, 2005) ............................................ 20

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42,* 8 F.3d 722, 725-26 (10th Cir. 1993)
      ............................................................................................................................... 23

*Brown v. Phillips Petroleum Co.,* 838 F.2d 451,454 (10th Cir. 1988).................... 8, 11

*Bullock v. Estate of Kircher,* 84 F.R.D. 1, 16-17 (D.N.J. 1979) ................................. 17

*Camden I Condo. Assn* v. *Dunkle,* 946 F.2d 768, 774-75 (11th Cir. 1991) .................. 8

*Cent. R.R. & Banking Co. v. Pettus,* 113 U.S. 116 (1885)............................................. 8

*Gottlieb v. Barry,* 43 F.3d 474 (10th Cir. 1994)............................................................. 8

*Grinnell,* 495 F.2d at 470-71 ........................................................................................ 16

*Harman v. Lyphomed, Inc.,* 945 F.2d 969, *975* (7th Cir. 1991) ..................................... 8

*Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994) ................................................... 24

*Herman & MacLean v. Huddleston,* 459 U.S. 375 (1983)........................................... 22

*In re Apollo Group, Inc. Sec. Litig.,* No. CV 04-2147-PHX-JAT, 2008 U.S. Dist.
      LEXIS 61995 (D. Ariz. Aug. 4, 2008), *rev'd,* 2010 U.S. Dist. App. LEXIS 14478
      (9th Cir. June 23, 2010) ......................................................................................... 18

*In re Blech Sec. Litig*, No. 94-7696, 2002 WL 31720381 (S.D.N.Y. Dec. 4, 2002)....20

*In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 535 (E.D. Mich. 2003) ............. 24

*In re Corel Corp., Inc. Sec. Litig.*, 293 F.Supp. 484, 497 (E.D. Pa. 2003) .................20

*In re Eng'g Animation Sec. Litig.*, 203 F.R.D. 417 (S.D. Iowa 2001) ........................20

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) ...24

*In re Ikon Office Solutions, Inc.,* 194 F.R.D. 166, 194 (E.D. Pa. 2000)................13, 15

*In re JDS Uniphase Corp. Sec. Litig.,* No. C 02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007).......................................................................................18

*In re King Res.,* 420 F. Supp. at 632, n. 8; (citing *Illinois v. Harper & Row Publishers, Inc.,* 55 F.R.D. 221, 224 (N.D. Ill. 1972)) ........................................................16, 17

*In re Marconi, PLC, Sec. Litig.,* No. 01-1259 (W.D. Pa. Jan. 1, 2004) (minute entry, Rec. Doc. No. 44) .....................................................................................................20

*In re Mego Fin.,* 213 F.3d 454 (9th Cir. 2000)..............................................................20

*In re OpNext, Inc. Sec. Litig.*, No. 08-920, Order and Final Judgment (D.N.J. Jan. 6, 2010) .....................................................................................................................21

*In re Opteum, Inc. Sec. Litig.*, 07-14278, slip op at 2 (S.D. Fla. Dec. 14, 2010).........20

*In re Plains Res. S'holders Litig.*, C.A. No. 071-N, 2005 Del. Ch. LEXIS 12, at *8 (Del. Ch. February 4, 2005) .......................................................................................7

*In re Prudential-Bache Energy Income P'ships Sec. Litig.,* No. 888, 1994 WL 202394, at *6 (E.D. La. May 18, 1994) ...........................................................17, 22

*In re Public Serv. Co. of New Mexico*, No. 91-0536-M, 1992 U.S. Dist. LEXIS 16326 at * 20 (S.D. Cal. July 28, 1992)........................................................................15, 23

*In re Ravisent Techs., Inc. Sec. Litig.*, No. 00-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ...............................................................................................................20

*In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 305 (3d Cir. 2005) ................................4

*In re Safety Components Int'l, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 76 (D.N.J. 2001) 20

*In re Shell Oil,* 155 F.R.D. at 574.................................................................................24

*In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir. 2001)...........................14, 23

*In re THC Fin. Corp. Litig.,* 86 F.R.D. 721, 742 (D.H. 1980) ....................................24

*In re Unisys Corp. Sec. Litig.*, C.A. No. 99-5333, 2001 U.S. Dist. LEXIS 20160, at *13-14 (E.D. Pa. Dec. 6, 2001)..................................................................................23

iv

*In re Virgin Mobile USA IPO Litigation*, 07-5619-SDW, slip op at 6 (D. N.J. Dec. 9, 2010) ...................................................................................................... 21

*In re Warner Commc'ns Sec. Litig.,* 618 F. Supp. 735, 747-48 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986) ................................................................ 14, 22

*Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974) ........... 11

*Lapin v. Goldman, Sachs & Co.,* 04 Civ. 02236, Final Judgment at 14 (S.D.N.Y. Dec. 16, 2010) ...................................................................................................... 21

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002)................. 20

*Mashburn v. National Healthcare, Inc.,* 684 F. Supp. 679, (M.D. Ala. 1988) ............. 5

*Maywalt v. Parker & Parsley Petroleum Co.*, 963 F.Supp. 310 (S.D.N.Y. 1997) ...... 20

*McKenzie Constr., Inc. v. Maynard,* 823 F.2d 43 (3d Cir. 1987)................................ 15

*McKittrick v. Gardner*, 378 F.2d 872, 875 (4th Cir. 1967) ........................................ 16

*Meyer v. Citizens & S. Nat'l Bank*, 117 F.R.D. 180, 183 (M.D. Ga. 1987)................ 23

*Miller v. Woodmoor Corp.*, No. 74-F-988, 1978 U.S. Dist. LEXIS *15234,* at *11-*12 (D. Colo. Sept. 28, 1978) ........................................................................... 13

*Mills,* 396 U.S. at 608 ................................................................................................. 24

*Missouri v. Jenkins*, 491 U.S. at 284 .......................................................................... 17

*Moorhead v. CONSOL Energy, Inc.,* No. 2:03-cv-01588-TFM (W.D. Pa. May 14, 2007) ...................................................................................................... 20

*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.,* 234 F.R.D. 627, *635* (W.D. Ky. 2006) ........................................................... 24

*Pennsylvania v. Delaware Valley Citizens' Counsel*, 483 U.S. 711 (1987)................ 17

*Phemister v. Harcourt Brace Jovanovich, Inc.,* 1984 WL 21981 (N.D.Ill. Sept.14, 1984) ...................................................................................................... 15

*Ressler v. Jacobson,* 149 F.R.D. 651, *656* (M.D. Fla. 1992) ................................ 21, 22

*Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, No. 97-7694, 2001 WL 1568856 (N.D. Ill. Dec 10, 2001) .......................................................... 20

*Rosenfeld v. Black*, 56 F.R.D. 604, 605 (S.D.N.Y. 1972) .......................................... 6

*Schleicher v. Wendt,* 1:02-cv-1332, Final Judgment at 5-6 (S.D. Ind. Feb. 17, 2011) 21

v

*See United States v. Tobias*, 935 F.2d 666, 668 (4th Cir. 1991) ....................................5

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) ..............................................................................................20

*Sutton v. Bernard,* 504 F.3d 688, 694 (7th Cir. 2007)....................................................17

*Swedish Hosp. Corp. v. Shalala, 1* F.3d 1261 (D.C. Cir. 1993)....................................8

*Trustees v. Greenough,* 105 U.S. *527* (1882) ................................................................8

*Wade v. Bayer AG,* No. CT-004748-06 (Shelby County, Tenn. Cir. Ct. Dec. 7, 2006) ..................................................................................................................................20

*Wheeler v. Durham City Bd. of Educ.*, 88 F.R.D. 27, 34 (M.D.N.C. 1980)...........23, 24

**Statutes**

15 U.S.C. §78u-4(a)(6) ....................................................................................................8

**Other Authorities**

Charles Silver, *Due Process and the Lodestar Method: You Can't Get There From Here,* 74 Tul. L. Rev. 1809, 1819-20 (2000) ...........................................................10

Report of the Third Circuit Task Force, *Court Awarded Attorney Fees,* 108 F.R.D. 237, 254 (Oct. 8, 1985). ...........................................................................................8

**Treatises**

*Manual for Complex Litigation* §14.121, at 187 (4th ed. 2004) ...................................8

# I. INTRODUCTION

Court-appointed Lead Counsel[1] in this securities class action, Brower Piven, A Professional Corporation ("Brower Piven") and Kahn Swick & Foti, LLC ("KSF")[2], respectfully submit this memorandum of law in support of their request for an award of attorneys' fees of one third $(33^1/_3\%)$ of the Gross Settlement Fund and reimbursement of litigation expenses of $20,555.88, plus interest on both amounts. The substantial recovery obtained for the Class[3] (the "Settlement Compensation") consists of: 1,5000,000 freely tradable shares of Smart Online, Inc. ("SOL" or the "Company") common stock (the "Stock Contribution"); $462,500 in cash (the "Cash Contribution"); and assignment of all recoveries by SOL on any and all claims Smart Online may have under federal or state law against non-settling Defendants Serrano, Lustig, Martin, Doolan, Jesup & Lamont and/or Sherb & Co (the "Non-Settling Defendants"). This partial settlement with the Settling Defendants[4] was achieved through the skill, experience, and effective advocacy of Lead Counsel. Lead Counsel's

---

[1] All capitalized terms that are not defined herein shall have the same meanings as set forth in the Stipulation.

[2] At the time of the appointment, KSF was known as Kahn Gauthier Swick, LLC.

[3] "Class" means all Persons who purchased or otherwise acquired publicly traded securities of SOL between May 2, 2005 through September 28, 2007, inclusive. Excluded from the Class are SOL, the Individual Defendants, officers and directors of SOL, their immediate families, legal representatives, heirs and assigns, and any entity in which any excluded Person has or had a controlling interest. Also excluded from the Class are those Persons who timely and validly request exclusion from the Class pursuant to the Notice of Pendency and Settlement of Class Action to be sent to Class Members.

[4] "Settling Defendants" are SOL; Maxim Group, LLC ("Maxim"); Dennis Michael Nouri; Reeza Eric Nouri; Henri Nouri; Ronna Loprete ("Loprete"); Nicholas A. Sinigaglia; Scott Whitaker; David E.Y. Sarna; Frank C. Coll; Shlomo Elia; C. James Meese, Jr.; Philippe Pouponnot; Jeffrey W. Lerose and Thomas P. Furr.

1

efforts to date have been without compensation of any kind and the fee has been wholly contingent upon the result achieved. Lead Counsel respectfully submit that the Settlement Compensation represents a substantial recovery for the Class, especially in light of the strained financial circumstances of the Settling Defendants, and is an excellent result by any measure.[5]

The requested percentage fee is consistent with the fees awarded in similar actions in this Circuit and decisions throughout the country and is the appropriate method of compensating counsel. The amount requested is especially warranted in the light of the creative and substantial recovery obtained for the Class and the significant obstacles presented in the prosecution of this Litigation against Defendants and the partial Settlement of this Litigation with the Settling Defendants. Here, Lead Plaintiff Mary Jane Beauregard ("Lead Plaintiff") and Lead Counsel represented the Class in the face of substantial risk that the Class, and therefore Lead Plaintiff and Lead Counsel, may have recovered nothing. The Litigation is subject to the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and, therefore, was subject to unique risks and difficulties. As former United States

---

[5] For a more detailed history of the Litigation and the factors bearing on the reasonableness of the settlement, Plan of Allocation, and award of attorneys' fees and expenses, the Court is respectfully referred to the accompanying Declaration of David A.P. Brower in Support of Lead Plaintiff's Motion for Final Approval of Partial Class Settlement and Plan of Allocation and Lead Plaintiff's Motion for Award of Attorneys' Fees and Expenses (the "Brower Decl."), incorporated herein by reference. Also submitted herewith are the Declaration of David A.P. Brower on Behalf Of Brower Piven, A Professional Corporation, in Support of Award of Attorneys' Fees and Expenses; the Declaration of Kim Miller in Support of Award of Attorneys' Fees and Expenses (the "Miller Decl."); and the Affidavit of Jason Zuena Regarding (a) Mailing of the Notice and Proof of Claim; (b) Publication of the Summary Notice; and (c) Reporting on Requests for Exclusions (the "Zuena Aff.")

Supreme Court Justice Sandra Day O'Connor noted in *Alaska Elec. Pension Fund v. Flowserve Corp., 572* F.3 d 221, 235 (5th Cir. 2009), "to be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action."

Lead Counsel firmly believe that the Settlement is the result of their creative and diligent efforts, as well as their reputations as attorneys who are unwavering in their dedication to the interests of investor classes and unafraid to zealously and fully prosecute a meritorious case. In a case asserting claims based on complex legal and factual issues which were opposed by highly skilled and experienced defense counsel, Lead Counsel succeeded in securing a very good result for the Class under challenging circumstances. As a result, Lead Counsel respectfully submit that the requested fee is fair and reasonable and should be awarded by this Court.

The Settlement was reached after extensive, hard-fought, and extremely complex multilateral negotiations spanning more than a year of in-person and telephonic meetings among counsel for the Parties. Lead Counsel and counsel for Defendants are zealous and able firms experienced in complex securities litigation, and the settlement was negotiated aggressively and at arm's-length.

Class Members appear to agree. In accordance with this Court's Order Preliminarily Approving Settlement and Providing Notice (the "Preliminary Approval Order"), 3,405 copies of the Notice of Proposed Settlement of Class Action (the "Notice") were sent to potential Class Members and a Summary Notice was published twice over the *Business Wire,* a widely-disseminated online news wire service. Zuena Aff. ¶3. The Notice informed Class Members that Lead Counsel would make an

3

application for one third (1/3) of the Settlement Fund and for expenses not to exceed $100,000, plus interest on such amounts. After this extensive notice program, as of the date of this memorandum, not a single objection has been made to Lead Counsel's proposed requested fees and expenses.[6] This fact strongly supports the fairness and reasonableness of the requested award. Indeed, in today's era of increased shareholder activism, "such a low level of objections is a 'rare phenomenon.'" *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 305 (3d Cir. 2005) (citation omitted).

For the reasons set forth herein and in the Brower Declaration, Lead Counsel respectfully submit that the attorneys' fees and expenses requested are fair and reasonable under the applicable legal standards and in light of the diligent efforts of counsel in pursuing this Litigation on a fully contingent basis for over three years, and the substantial benefits obtained for the Class, should be awarded by the Court.

## II. ARGUMENT

### A. Lead Counsel Is Entitled To An Award of Attorneys' Fees and Reimbursement of Expenses For Obtaining the Benefits Conferred on the Class

For their efforts in creating a common fund for the benefit of the Class, Lead Counsel seeks a reasonable percentage of the fund recovered as attorneys' fees. This percentage is to be spread evenly across the three components of the Settlement Compensation: Lead Counsel request one-third (1/3) of the Cash Contribution, one-third (1/3) of the Stock Contribution, and one-third of the recovery, if any, obtained by

---

[6] The deadline for objections to the request for an award of attorneys' fees and/or expenses is April 18, 2011. If any objection to the fee or expense request(s) is received by that deadline, Lead Counsel will address it in a reply memorandum to be filed no later than April 25, 2011.

SOL on its claims against the non-Settling Defendants. In this respect, Lead Counsel's request is fair and reasonable, in that Lead Counsel will share in any benefit to the Class in direct proportion to the value of each component of the Settlement Compensation.

As stated in *Mashburn v. National Healthcare, Inc.,* 684 F. Supp. 679, (M.D. Ala. 1988), this approach encourages counsel to protect the rights of those who may have very small claims:

> Historically, the rationale entitling counsel to a percentage of the common fund derives from the equitable power of the Courts under the doctrines of *quantum meruit*, unjust enrichment and later, what has become known as the 'substantial' or 'common benefit' doctrine . . .

> More recently, courts also have acknowledged the economic reality that in order to encourage 'private attorney general' class actions brought to enforce the securities laws on behalf of persons with small individual losses, a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate client, to devote their time to complex, time-consuming cases for which they may never be paid.

*Id.,* at 686-87 (citations omitted). The Fourth Circuit has followed this reasoning, recognizing that counsel who create a settlement fund for the benefit of a class are entitled to be compensated for their services. *See United States v. Tobias*, 935 F.2d 666, 668 (4th Cir. 1991). In *Tobias*, the Fourth Circuit explained that:

> [t]he common fund doctrine is founded upon the principle that when one who, while establishing his own claim, also establishes the means by which others may collect their claims, a chancellor in equity may award counsel fees to the trial blazer out of the property made available for the satisfaction of all claims. The principle is applied so that the one who led in hewing the path to victory is not left saddled with extensive attorney's fees, which need not be incurred by his more timid fellows who held back until the fruits of the pioneer's success were laid before them.

935 F.2d at 668 (*quoting Gibbs v. Blackwelder*, 346 F.2d 943, 945 (4th Cir. 1965)).[7]

In addition to the cash and stock components of the Settlement, Lead Counsel seek one third of any recoveries obtained by the Class as a result of SOL pursuing its claims against the Non-Settling Defendants. This potential additional relief is appropriate for consideration in awarding Lead Counsel attorneys' fees. As the Supreme Court further explained in *Mills*:

> **The fact that this suit has not yet produced, and may never produce, a monetary recovery from which the fees could be paid does not preclude an award based on this rationale.** Although the earliest cases recognizing a right to reimbursement involved litigation that had produced or preserved a "common fund" for the benefit of a group, nothing in these cases indicated that the suit must actually bring money into the court as a prerequisite to the court's power to order reimbursement of expenses.
>
> \*       \*       \*
>
> Other cases have departed further from the traditional metes and bounds of the doctrine, to permit reimbursement of expenses in cases where the litigation has conferred a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them. This development has been most pronounced in shareholders' derivative actions, where the courts increasingly have recognized that the expenses incurred by one shareholder in the vindication of a corporate right of action can be spread among all shareholders through an award against the corporation, regardless of whether an actual money recovery has been obtained in the corporation's favor. For example, awards have been sustained in suits by stockholders complaining that shares of their corporation had been issued wrongfully for an inadequate consideration. . . . In these cases

---

[7] *See also Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) (contingency fees from a common fund are often the only means of legal representation available); *Rosenfeld v. Black*, 56 F.R.D. 604, 605 (S.D.N.Y. 1972) ("Private attorneys general have been encouraged by the courts to tilt the lance for justice by the awarding of generous fees…in this kind of case the recovery is 'like a case of salvage on a derelict.'"(*citing Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 371 (1966)).

> there was a "common fund" only in the sense that the court's
> jurisdiction over the corporation as nominal defendant made it possible
> to assess fees against all of the shareholders through an award against
> the corporation.

*Id.* at 392-395.

Thus, courts routinely award attorneys' fees when solely a non-monetary or therapeutic benefit is obtained. *See id.* *See also, e.g.*, *In re Plains Res. S'holders Litig.*, C.A. No. 071-N, 2005 Del. Ch. LEXIS 12, at *8 (Del. Ch. February 4, 2005) ("where a litigant has conferred a monetary *or non-monetary* benefit upon an identifiable class of stockholders, all of the stockholders should contribute to the costs of achieving that benefit." (emphasis added).[8] Accordingly, Lead Counsel is entitled to an award of attorneys' fees and reimbursement of their expenses from any recoveries that the Class obtains in the future from pursuit by SOL of its claims against the Non-Settling Defendants.

## B. A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

In recent years, the percentage method of awarding fees has become the prevailing method for awarding fees in common fund cases throughout the United

---

[8] The following is a sampling of cases where fees and expenses have been awarded to successful plaintiffs' counsel in shareholder suits based on recovering non-monetary relief: *In re Golden State Bancorp S'holders Litig., Inc.*, C.A. No. 16175, 2000 Del. Ch. LEXIS 8 (Del. Ch. Jan. 7, 2000); *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1165 (Del. 1989); *Allied Artists Picture Corp. v. Baron*, 413 A.2d 876, 878 (Del. 1980); *aff'd*, *Johnston v. Wolfe*, 487 A.2d 1132 (Del. 1985); *Friedman v. Baxter Travenol Labs., Inc.*, 1986 Del. Ch. LEXIS 367, at *13 (Del. Ch. Feb. 18, 1986) ("[t]here is no doubt that in an appropriate case an intangible, non-monetary benefit achieve by a settlement will justify an award of attorneys' fees."); *Polk v. Good*, 507 A.2d 531, 539 (Del. 1986) (affirming fee award where benefit consisted primarily of modification of a voting provision in a stock repurchase agreement); *Chrysler Corp. v. Dann*, 223 A.2d 384, 389 (Del. 1966) (affirming fee award for changes in executive compensation plan).

States.  A percentage fee award is appropriate because it encourages counsel to obtain

the maximum recovery for the class at the earliest possible stage of the litigation and,

hence, most fairly correlates plaintiffs' counsel's compensation to the benefit achieved

for the class.  *See, e.g., Trustees v. Greenough,* 105 U.S. *527* (1882); *Cent. R.R. &*

*Banking Co. v. Pettus,* 113 U.S. 116 (1885).  In *Blum v. Stenson,* 465 U.S. 886, 900

n.16 (1984), the Supreme Court recognized that under the "common fund doctrine" a

reasonable fee may be based "on a percentage of the fund bestowed on the class."

The percentage-of-recovery method is the only method expressly approved by the

Supreme Court in common fund cases.  Moreover, supporting authority for the

percentage method in federal courts throughout the United States is overwhelming.[9]

The *Manual for Complex Litigation* also endorses the use of the percentage-of-the-

fund method in awarding attorneys' fees in common fund cases.  *See Manual for*

*Complex Litigation* §14.121, at 187 (4th ed. 2004) (commenting that "the vast

majority of courts of appeals now permit or direct district courts to use the percentage-

fee method in common-fund cases") (footnotes omitted).  Likewise, the PSLRA itself

counsels that fees in securities cases should be measured on a percentage basis.  *See*

---

[9] Courts favor the percentage-of-recovery approach for the award of attorneys' fees in
common fund cases. Two circuits have ruled that the percentage method is ***mandatory***
in common fund cases. *Swedish Hosp. Corp. v. Shalala, 1* F.3d 1261 (D.C. Cir. 1993);
*Camden I Condo. Assn* v. *Dunkle,* 946 F.2d 768, 774-75 (11th Cir. 1991). Other
circuits and commentators have expressly approved the use of the percentage method.
*Gottlieb v. Barry,* 43 F.3d 474 (10th Cir. 1994) (authorizing percentage method and
holding that use of lodestar/multiplier method was abuse of discretion); *Brown v.*
*Phillips Petroleum Co.,* 838 F.2d 451,454 (10th Cir. 1988) (citing footnote 16 of *Blum*
recognizing both "implicitly" and "explicitly" that a percentage recovery is reasonable
in common fund cases); *Harman v. Lyphomed, Inc.,* 945 F.2d 969, *975* (7th Cir.
1991); Report of the Third Circuit Task Force, *Court Awarded Attorney Fees,* 108
F.R.D. 237, 254 (Oct. 8, 1985).

15 U.S.C. §78u-4(a)(6). It is thus generally accepted in the Fourth Circuit that there is a preference for awarding attorneys' fees based on a common fund recovery pursuant to the percentage-of-the-fund method of calculation. *See, e.g., Smith v. Krispy Kreme Doughnut Corp.,* No. 1:05CV00187, 2007 U.S. Dist. LEXIS 2392, *34, (M.D.N.C. Jan. 10, 2007) (finding reasonable fee is normally a percentage of class recovery).[10]

The rationale for compensating counsel in common fund cases on a percentage basis is sound. First, it is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated by a percentage of the recovery.[11] Second, it more closely aligns the lawyers' interest in being paid a fair fee

---

[10] Although the Fourth Circuit has yet to address this particular issue, federal courts within the Fourth Circuit have routinely endorsed the percentage approach. *See, e.g., In re Royal Ahold N.V. Sec. & ERISA Litig.,* No. 03-MD-1539, 2006 U.S. Dist. LEXIS 85722 at **13-14 (D. Md. Nov. 2, 2006); *Goldenberg v. Marriott PLP Corp.,* 33 F. Supp. 2d 434, 438 (D. Md. 1998) (noting endorsement of percentage-of-recovery method by several courts in the Fourth Circuit); *Goldenberg v. Marriot PLP Corp.,* 33 F. Supp.2d 434, 437-48 (D. Md. 1998); *Strang v. JHM Mortgage Sec. Ltd. P'ship,* 890 F. Supp. 499, 502-03 (E.D. Va. 1995) ("the percentage method is more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases."); *In re M.D.C. Holdings Sec. Litig.,* No. CV 89-0090, 1990 U.S. Dist. LEXIS 15488 at *24 (S.D. Cal. Aug. 30, 1990) (noting that the percentage method is also consistent with "the private marketplace where contingent fee attorneys are customarily compensated on a percentage of the recovery method," which provides plaintiff's counsel with the motivation to efficiently prosecute their client's case, and "the percentage method decreases the burden imposed upon the court by other fee award procedures, especially the lodestar method, and assures that class members do not experience undue delay in receiving their share of the proceeds of the settlement due to protracted fee proceedings."); *Edmonds v. U.S.,* 658 F. Supp. 1126, 1143-5 (D.S.C. 1987) ("[T]he preferred method of computation of fees in [the] common fund case is the percentage of fund method," because it "encourages class counsel to push the settlement fund demanded to the limit.")

[11] Courts are encouraged to look to the private marketplace in setting a percentage fee: "The judicial task might be simplified if the judge and the lawyers [spent] their efforts on finding out what the market in fact pays not for the individual hours but for the

with the interest of the class in achieving the maximum possible recovery in the shortest amount of time.[12]  Indeed, one of the nation's leading scholars in the field of class actions and attorneys' fees, Professor Charles Silver of the University of Texas School of Law, has concluded that the percentage method of awarding fees is the only method of fee awards that is consistent with class members' due process rights. Professor Silver notes:

> ***The consensus that the contingent percentage approach creates a closer harmony of interests between class counsel and absent plaintiffs than the lodestar method is strikingly broad.*** It includes leading academics, researchers at the RAND Institute for Civil Justice, and many judges, including those who contributed to the Manual for Complex Litigation, the Report of the Federal Courts Study Committee, and the report of the Third Circuit Task Force. Indeed, it is difficult to find anyone who contends otherwise. No one writing in the field today is defending the lodestar on the ground that it minimizes conflicts between class counsel and absent claimants.

Charles Silver, *Due Process and the Lodestar Method: You Can't Get There From Here,* 74 Tul. L. Rev. 1809, 1819-20 (2000) (emphasis added; footnotes omitted).

Finally, the percentage-of-recovery fees also have the salutary effect of conserving judicial resources. Percentage fees are simple to calculate, are not subject to manipulation, and do not require the court to "second guess" each and every

---

ensemble of services rendered in a case of this character." *In re Cont'l Ill. Sec. Litig.,* 962 F.2d *566,* 572 (7th Cir. 1992).

[12] In *Kirchoff v. Flynn,* 786 F.2d 320, 325-26 (7th Cir. 1986), the court stated: "The contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains.... The unscrupulous lawyer paid by the hour may be willing to settle for a lower recovery coupled with a payment for more hours. Contingent fees eliminate this incentive and also ensure a reasonable proportion between the recovery and the fees assessed to defendants. At the same time as it automatically aligns interests of lawyer and client, rewards exceptional success, and penalizes failure, the contingent fee automatically handles compensation for the uncertainty of litigation."

decision made by counsel during the course of a complex case. *Strang v. JHM Mortgage Sec. Ltd. P 'ship,* 890 F. Supp. 499, 503 (E.D. Va. 1995) ("the percentage method is more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases").

## C. Lead Counsel's Fee Request Is Reasonable Under Fourth Circuit Criteria

Lead Counsel's request for fees representing $33^1/_3$% of the Gross Settlement Fund is fair and reasonable under the relevant standards. To determine the reasonableness of the requested percentage fee award sought by Lead Counsel, this Court may elect to apply all or some of the so-called "*Johnson* factors" first announced by the Fifth Circuit in *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974), which were adopted by the Fourth Circuit in *Barber v. Kimbrell's,* 577 F.2d 216, 226 (4th Cir. 1978). These include: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the customary fee; (5) whether the fee is fixed or contingent; (6) the amount involved and the results obtained; (7) the experience, reputation, and ability of counsel; and (8) awards in similar cases. It is widely recognized that "rarely are all of the *Johnson* factors applicable." *Phillips Petroleum,* 838 F.2d at 456. The below analysis of the applicable factors supports the fee request.

### 1. The Time and Labor Involved

While the time and labor required to successfully prosecute this Litigation and obtain the outstanding settlement for the Class justifies the requested fee, courts have found this *Johnson* factor to be of less importance in a common fund case, such as this case. *See*, *e.g.*, *Phillips Petroleum* 838 F.2d at 456. In pursuing this Litigation on

behalf of the Class, Lead Counsel marshaled considerable resources and expended time in the research, investigation, and prosecution of this Litigation. The Settlement was reached after Lead Counsel: (a) conducted an extensive investigation into the underlying facts, including all the allegations set forth in the Consolidated Amended Class Action Complaint that was filed on September 18, 2008 ("Complaint"); (b) thoroughly researched the law pertinent to the Class Members' claims and the Defendants' defenses; (c) reviewed and analyzed the Company's public statements and filings with the Securities Exchange Commission ("SEC") during the Class Period; (d) reviewed and analyzed the records of the criminal proceedings and other governmental and administrative agencies review and investigations of events underlying the claims in the litigation; (e) collected and reviewed analyst reports and major financial news service reports on the Company; (f) reviewed news articles and message board postings; (g) drafted and filed the comprehensive Complaint; and (h) engaged in over a year of complex and hard-fought settlement negotiations; and finally drafted and negotiated the terms of the formal Stipulation and its accompanying notices and order. The Settlement was reached at a time when Lead Plaintiff and Lead Counsel had a strong understanding of the strengths and weaknesses of the case, the risks of continued litigation, and the propriety of settlement. Lead Counsel and Liaison invested more than 1,334.5 hours in the prosecution of this case.

Here, Lead Counsel prosecuted this case aggressively and efficiently, resulting in a substantial cash, stock, and potentially valuable contingent recoveries for the Class. Rather than unnecessarily billing hours and incurring even more significant

expenses, which would only further delay any recovery to the Class, through their skill and acumen of Lead Counsel have produced significant and immediate benefits for the Class. As a result, this factor strongly supports approval of the requested fee.[13]

### 2. The Novelty and Difficulty of the Questions

The complexity of the issues is a significant factor to be considered in making a fee award. Courts have long recognized that the novelty and difficulty of the issues in a case are significant factors to be considered in making a fee award. *See, e.g., Miller v. Woodmoor Corp.*, No. 74-F-988, 1978 U.S. Dist. LEXIS *15234,* at *11-*12 (D. Colo. Sept. 28, 1978) ("Despite years of litigation, the area of securities law has gained little predictability. There are few 'routine' or 'simple' securities actions."). Judge Finesilver's comments ring even more true today. While securities cases have always been complex and difficult to prosecute, the PSLRA has only increased the difficulty in successfully prosecuting a securities class action. *See In re Ikon Office Solutions, Inc.,* 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiffs perspective in the wake of the PSLRA").

In cases of this complexity, success at summary judgment, at trial or on appeal is never certain. Indeed, it can be said without fear of gainsay that victory at the trial

---

[13] As noted above, Lead Counsel request one-third of each component of the Settlement Compensation: one-third of the Cash Contribution, one-third of the Stock Contribution, and one-third of the recovery, if any, obtained by the Class from SOL's prosecution of its claims against the Non-Settling Defendants. Lead Plaintiff and Lead Counsel believe that spreading attorneys' fees across each of the Settlement components is fairer to the Class than requesting an all-cash compensation for Lead Counsel, because under this proposal, Lead Counsel will share in any benefit to the Class in direct proportion to the value of each component of the Settlement Compensation to the Class.

13

or appellate stages of a complex securities fraud action is unpredictable. *See, e.g., In re Warner Commc'ns Sec. Litig.,* 618 F. Supp. 735, 747-48 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986). Despite the novelty and difficulty of the issues raised here, Lead Counsel secured an excellent result for the Class. As a result, this factor supports the requested award.

### 3. The Skill Requisite to Perform the Legal Service Properly

The Settlement was achieved by Lead Counsel with extensive experience in prosecuting and trying complex class actions. As the court recognized in *Edmonds v. United States,* 658 F. Supp. 1126, 1137 (D. S.C. 1987), the "prosecution and management of a complex national class action requires unique legal skills and abilities." Lead Counsel's experience and skill were demonstrated by their willingness to pursue this Litigation when a recovery appeared unlikely due to the poor financial condition of the Settling Defendants and lack of a source of recovery through directors' and officers' insurance that is typically available in cases of this type, and their creativity and perseverance in crafting this Settlement that took into account every form of consideration that was available to compensate the Class is a testimony to the superior quality of Lead Counsel.

### 4. The Customary Fee

Circuit courts and scholars have advocated the "mimic the market" approach in setting fees in common fund class action cases. *See, e.g., Cont'l Ill.,* 962 F.2d at 568 ("[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling

his services in the market rather than being paid by court order."); *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir. 2001) ("[W]hen deciding on appropriate fee levels in common fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.").

Courts often look at fees awarded in comparable cases to determine if the fee requested is reasonable. If this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. As Supreme Court Justices Brennan and Marshall observed in their concurring opinion in *Blum:* "In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery." *Blum,* 465 U.S. at 903; *see also Ikon,* 194 F.R.D. at 194 (in private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery); *In re Public Serv. Co. of New Mexico*, No. 91-0536-M, 1992 U.S. Dist. LEXIS 16326 at * 20 (S.D. Cal. July 28, 1992) ("If this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery."); *In re M.D.C. Holdings,* 1990 U.S. Dist. LEXIS 15488 at * 22 ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery."); *Phemister v. Harcourt Brace Jovanovich, Inc.,* 1984 WL 21981, at *15 (N.D.Ill. Sept.14, 1984) ("The percentages agreed on [in non-class action damage lawsuits] vary, with one-third being particularly common."); *McKenzie Constr., Inc. v. Maynard,* 823 F.2d 43 (3d Cir. 1987) (33-1/3% contingent fee held reasonable). Thus,

15

the requested fee is within the range of the customary contingent fee in the private marketplace and supports a fee award of one third of the recovery

### 5. Whether the Fee Is Contingent or Fixed

Lead Counsel undertook to represent the Class on a wholly contingent fee basis, assuming a risk that the Litigation would yield no recovery and leave them uncompensated. Unlike counsel for Defendants who are paid an hourly rate and paid for their expenses on a regular basis, Lead Counsel have not been compensated for their time or expense in representing the Class.

A determination of a fair fee must include consideration of the contingent nature of the fee. Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. "The Contingent nature of counsel's compensation has long been recognized as justifying a larger fee." *In re King Res.,* 420 F. Supp. at 632, n. 8; (citing *Illinois v. Harper & Row Publishers, Inc.,* 55 F.R.D. 221, 224 (N.D. Ill. 1972)). As the Fourth Circuit observed in *McKittrick v. Gardner*, 378 F.2d 872, 875 (4th Cir. 1967): "[c]harges on the basis of a minimal hourly rate are surely inappropriate for a lawyer who has performed creditably when payment of any fee is so uncertain." *See also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470-71 (C.A.N.Y. 1974) ("[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance has agreed to pay for his services, regardless of success."). As the court in *Prudentia*l noted regarding the risks that plaintiffs' counsel had undertaken:

Although today it might appear that risk was not great based on

> Prudential Securities' global settlement with the Securities and
> Exchange Commission, such was not the case when the action was
> commenced and throughout most of the litigation. Counsel's contingent
> fee risk is an important factor in determining the fee award. Success is
> never guaranteed and counsel faced serious risks since both trial and
> judicial review are unpredictable. Counsel advanced all of the costs of
> litigation, a not insubstantial amount, and bore the additional risk of
> unsuccessful prosecution.

*In re Prudential-Bache Energy Income P 'ships Sec. Litig.,* No. 888, 1994 WL

202394, at *6 (E.D. La. May 18, 1994). *See also Sutton v. Bernard,* 504 F.3d 688, 694

(7th Cir. 2007).

Plaintiffs' contingent fee arrangement with counsel also created a substantial

delay in receipt of payment for services rendered. That too has been held to be a

factor warranting the increase of a fee award. *See, e.g., In re King Res.*, 420 F. Supp.

at 631-32. The Supreme Court has repeatedly held that "an enhancement for delay in

payment is, where appropriate, part of a 'reasonable attorney's fee.'" *Missouri v.

Jenkins*, 491 U.S. 274, 284 (1989); *Pennsylvania v. Delaware Valley Citizens'

Counsel*, 483 U.S. 711 (1987). While plaintiffs' counsel have devoted their time and

resources to this Action since July 2006, they were experiencing the loss of

investment income to support their overhead and litigation expenses, thus

compounding the negative economic effect of a delay in payment. Few corporations

or law firms would be willing to make such a substantial investment knowing that

there was a substantial risk of loss. These important practical considerations also

support the award sought here. *See, e.g., Bullock v. Estate of Kircher,* 84 F.R.D. 1, 16-

17 (D.N.J. 1979).

Indeed, the risk of no recovery in complex cases of this type is very real. There

17

are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise.[14]

As noted above, Lead Counsel and Liaison have received no compensation during the course of this Litigation and have incurred significant expenses in litigating for the benefit of the Class. They have expended 1,334.50 hours of attorney and paralegal time in obtaining this result and any fee award or expense payment to Lead Counsel has always been at risk and completely contingent on the result achieved and on this Court's exercise of its discretion in making any award. Thus, the contingent nature of the Litigation supports the requested percentage.

### 6. The Amount Involved and the Results Obtained

Courts have consistently recognized that the result achieved is one of the most important factors to be considered in making a fee award. *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *King Res.,* 420 F. Supp. at 630 ("the amount of the recovery, and end result achieved are of primary importance, for these are the true benefit to the client").

The Settlement Compensation obtained here is of significant value to the Class, and has been obtained through the diligent and skillful efforts of Lead Counsel

---

[14] Two recent examples highlight this point. In a case against JDS Uniphase Corporation, after a lengthy trial involving securities claims, the jury reached a verdict in defendants' favor *In re JDS Uniphase Corp. Sec. Litig.,* No. C 02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007).[14] While the Ninth Circuit recently reversed the decision, the court in *In re Apollo Group, Inc. Sec. Litig.,* No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008), *rev'd,* 2010 U.S. Dist. App. LEXIS 14478 (9th Cir. June 23, 2010), on a motion for judgment as a matter of law, overturned a jury verdict of $277 million in favor of shareholders based on insufficient evidence presented at trial to establish loss causation.

without the necessity and risk of prolonged litigation, trial, and appeals. But for Lead Plaintiff's and Lead Counsel's efforts, it is unlikely that the present recovery would have been obtained for the benefit of the Class. There is no question that Lead Counsel overcame difficult obstacles and took significant risks in obtaining this favorable result for the Class. As a result of this settlement, Class Members will receive compensation for their losses in SOL securities now and avoid the substantial expense, delay, and uncertainty of continued litigation.

### 7. The Experience, Reputation, and Ability of the Attorneys

Lead Counsel's efforts in efficiently bringing this Litigation against the Settling Defendants to a successful conclusion are the best indicator of the experience and ability of the attorneys involved. That Lead Counsel have managed the Litigation in an efficient, disciplined, and pragmatic fashion confirms that this Litigation was ably prosecuted for the benefit of the Class. As discussed above, Lead Counsel are well regarded nationally for their successful representation of clients in complex class action matters. In further evidence of this, the firm resume of Brower Piven is attached to the Brower Declaration as Exhibit A, and the firm resume of KSF is attached to the Miller Declaration as Exhibit A. This factor supports Lead Counsel's fee application.

### 8. Awards in Similar Cases

Under the percentage method, the Court can determine the typicality of counsels' request by examining the range of percentages that are awarded in similar cases. For instance, in *In re M.D.C. Holdings,* 1990 U.S. Dist. LEXIS 15488, at *21, the court awarded attorneys' fees in a securities class action, stating:

The fee award requested here is thirty percent. That percentage is consistent with -- or less than -- awards made in similar cases and is within the 30-40% range common to non-representative contingent litigation. Plaintiff's counsel's efforts throughout this litigation were performed on a wholly contingent basis. It is clear that plaintiff's counsel took significant risks throughout the litigation and produced a substantial common fund. In these circumstances it necessarily follows that plaintiff's counsel are entitled to the award of a fee based on a percentage of the benefits conferred.

Indeed, a review of the percentages of the recovery awarded in attorneys' fees in just a few of the legions of class action precedents, including authority from federal courts in this Circuit, demonstrates that far higher fees are generally awarded in such cases.[15] Here, Plaintiffs' counsel has obtained a very substantial benefit for the Class

---

[15] *See, e.g., Maywalt v. Parker & Parsley Petroleum Co.*, 963 F.Supp. 310 (S.D.N.Y. 1997) (awarding 1/3 of $8.25 million settlement); *In re Mego Fin.*, 213 F.3d 454 (9th Cir. 2000) (affirming district court's award of 1/3 of $1.725 million settlement); *In re Safety Components Int'l, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 76 (D.N.J. 2001) (awarding one-third of $4.5 million settlement); *In re Eng'g Animation Sec. Litig.*, 203 F.R.D. 417 (S.D. Iowa 2001) (awarding 1/3 of $7.5 million settlement); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97-7694, 2001 WL 1568856 (N.D. Ill. Dec 10, 2001) (awarding 1/3 of $14 million settlement); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) (awarding 1/3 of $11.5 million settlement); *In re Blech Sec. Litig*, No. 94-7696, 2002 WL 31720381 (S.D.N.Y. Dec. 4, 2002) (awarding 1/3 of $2.795 million and noting that this percentage is consistent with awards made in similar cases); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (awarding one-third of $1.5 settlement and citing cases awarding 1/3 in securities cases); *In re Corel Corp., Inc. Sec. Litig.*, 293 F.Supp. 484, 497 (E.D. Pa. 2003) ("the [one-third] fee request in this complex case is within the reasonable range."); *In re Marconi, PLC, Sec. Litig.,* No. 01-1259 (W.D. Pa. Jan. 1, 2004) (minute entry, Rec. Doc. No. 44) (awarding 1/3 of $4.66 million settlement); *In re Heritage Bond Litig. v. US. Trust Co. of Tex., NA.,* No. 02-ML-1475- DT (RCx), 2005 U.S. Dist. LEXIS 13627, at *61 (C.D. Cal. June 10, 2005) (awarding 1/3 of $27,783,000 settlement); *In re Ravisent Techs., Inc. Sec. Litig.*, No. 00-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) (awarding 1/3 of $7 million settlement); *Moorhead v. Consol. Energy, Inc.,* No. 2:03-cv-01588-TFM (W.D. Pa. May 14, 2007) (awarding 33-1/3% of $2.7 million recovery, plus expenses); *In re Opteum, Inc. Sec. Litig.*, 07-14278, slip op at 2 (S.D. Fla. Dec. 14, 2010) (awarding $33^1/_3$% of a $2.35 million settlement), Miller Decl. Exh. B; *In re Virgin Mobile USA IPO Litig.*, 07-5619-SDW, slip op at 6 (D. N.J. Dec. 9, 2010)

because of their effective representation, despite significant risk in the face of determined, resourceful oppositions.

Thus, Lead Counsel's percentage fee request is consistent with awards in similar cases in this and other circuits.

### 9. The Reaction of the Class Confirms that the Requested Fee Is Reasonable

The settlement notice that was mailed to over 3,400 potential Class Members and nominees (Zuena Aff. ¶ 3) advised them that counsel would apply for a fee award of $33^1/_3$% of the Settlement Fund plus expenses and that Class Members could object to the fee application. Despite the extensive notice program, as far as Lead Counsel are aware, there has been no objection to the fee request.[16] The date for filing objections expires on April 18, 2011. The paucity of objections is itself important evidence that the requested fee is fair. *See, e.g., Ressler v. Jacobson,* 149 F.R.D. 651, *656* (M.D. Fla. 1992) (noting that the lack of objections is "strong evidence of the propriety and acceptability" of fee request). As demonstrated herein and in the Brower Declaration, the fees requested are reasonable under the applicable standards

---

(awarding $33^1/_3$% of a $19.5 million settlement fund), Miller Decl. Exh. C.; *In re OpNext, Inc. Sec. Litig.*, No. 08-920, Order and Final Judgment (D.N.J. Jan. 6, 2010) (awarding 1/3 of $2 million settlement), Miller Decl. Exh. D.; *Lapin v. Goldman, Sachs & Co.,* 04 Civ. 02236, Final Judgment at 14 (S.D.N.Y. Dec. 16, 2010) (awarding 33.3% of a $29 million settlement), Miller Decl. Exh. F; *Schleicher v. Wendt,* 1:02-cv-1332, Final Judgment at 5-6 (S.D. Ind. Feb. 17, 2011) (awarding 33 1/3% of a $41.5 million settlement), Miller Decl. Exh. E.

[16] The only objection received to date has addressed the Settlement, and raises no issues as to the request for attorneys' fees and expenses. This objection will be addressed in Lead Plaintiff's reply in support of final approval of Settlement and Plan of Allocation, to be submitted after the April 18, 2011, deadline for submission of objections.

and should be approved.

### 10. Important Public Policy Considerations Also Support the Requested Fee Award

The federal securities laws are remedial in nature and, in order to effectuate their purpose of protecting investors' private lawsuits, are to be encouraged. *See Basic Inc. v. Levinson,* 485 U.S. *224 (1988); Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299 *(1985); Herman & MacLean v. Huddleston,* 459 U.S. 375 (1983). Indeed, the ultimate effectiveness of these remedies may largely depend on the efficacy of the class action device. As one court has noted:

> In complex securities class actions and shareholder derivative litigation, able counsel for plaintiffs can be retained only on a contingent basis. A large segment of the investing public would be denied a remedy for violations of the securities laws and breaches of fiduciary duty by public companies and those entrusted with their stewardship if contingent fees awarded by the courts did not fairly and adequately compensate counsel for the services provided, the serious risks undertaken and the delay before any compensation is received. Filing of contingent lawsuits in this connection should not be chilled by the imposition of fee awards which fail to adequately compensate counsel for the risks of pursuing such litigation and the benefits which would not otherwise have been achieved but for their persistent and diligent efforts.

*Prudential,* 1994 WL 202394, at *8.

Fair compensation to encourage plaintiffs' attorneys to undertake such cases, therefore, is vital to the private enforcement of shareholder rights. *See In re Warner*, 618 F. Supp. at 750-51 ("Fair awards in cases such as this encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance."); *Ressler,* 149 F.R.D. 658 ("[a]ttorneys who bring class actions . . . are vital to the enforcement of the securities laws"); *see also In re Public Serv. Co. of New Mexico*, 1992 U.S. Dist. LEXIS 16326 at **31-2. Accordingly, public policy strongly

supports approval of the requested fees and an award of the fee requested herein would be fully consistent with important public policy considerations.

### D. Lead Plaintiff's Expenses Are Reasonable and Should Be Reimbursed

Payment of reasonable costs and expenses to counsel who create a common fund is both necessary and routine. *Synthroid Mktg.,* 264 F.3d at 722; *Strang,* 890 F. Supp. at 503. The appropriate analysis in deciding which expenses should be reimbursed in a case such as this is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See, e.g., Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42,* 8 F.3d 722, 725-26 (10th Cir. 1993).[17]

Here, Lead Plaintiff's counsel incurred $20,555.88 in out-of-pocket expenses in the prosecution of the Litigation. These expenses include, *inter alia*, the costs of photocopying, postage, travel, lodging, long distance telephone, telecopier, computer database research, and the fees and expenses of Lead Plaintiff's expert financial consultants. Lead Counsel submit that these expenses were reasonably and necessarily incurred to achieve the result obtained,[18] and are the type typically charged

---

[17] *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (expenses recoverable if customary to bill for clients for them); *Behrens,* 118 F.R.D. at 549; *Meyer v. Citizens & S. Nat'l Bank*, 117 F.R.D. 180, 183 (M.D. Ga. 1987); *Edmonds,* 658 F. Supp. at 1142-43; *Wheeler v. Durham City Bd. of Educ.*, 88 F.R.D. 27, 34 (M.D.N.C. 1980).

[18] Courts routinely find that these categories of expenses should be reimbursed. *See In re Unisys Corp. Sec. Litig.*, C.A. No. 99-5333, 2001 U.S. Dist. LEXIS 20160, at *13-14 (E.D. Pa. Dec. 6, 2001) (finding that fees and costs associated with expert witnesses and consultants, as well as computer assisted legal research costs are often deemed incidental to a large litigation) (citations omitted); *Behrens,* 118 F.R.D. at 549 (Court found that expenses for travel, depositions, filing fees, postage, telephone usage and copying should all be reimbursed.); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (finding that plaintiffs' request for reimbursement of filing fees, expert fees, service of process, travel, legal research, as

23

to hourly paying clients. *See In re Royal Ahold,* 2006 U.S. Dist. LEXIS 85722 at \*21; *see also Edmonds*, 658 F. Supp. at 1142-43; *Wheeler*, 88 F.R.D. at 34.[19] Lead Counsel incurred these expenses carefully and avoided duplication of effort and, therefore, multiplying the expenses. .

Finally, the Notice to the Class Members explained that Lead Plaintiffs' counsel would seek reimbursement of expenses incurred in the prosecution of this Action up to $100,000. Although the request for reimbursement of expenses is less than the amount set forth in the notice, to date, no member of the Class has raised an objection to the reimbursement of expenses. Therefore, the requested expenses should be allowed. *See Mills,* 396 U.S. 375, 389 (1970); *In re Shell Oil,* 155 F.R.D. 552, 574 (E.D. La. 1993) ; *In re THC Fin. Corp. Litig.,* 86 F.R.D. 721, 742 (D.H. 1980).

## III. CONCLUSION

For all of the foregoing reasons, Lead Counsel respectfully request the Court to award attorneys' fees of one third of the Settlement Fund (comprising one-third of the Cash Contribution, one-third of the Stock Contribution, and one-third of the proceeds to the Class from the recovery, if any, from the prosecution of SOL's claims against

---

well as document production and review expenses, were "the type for which 'the paying, arms' length market' reimburses attorneys"); *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 535 (E.D. Mich. 2003) (holding that plaintiffs' counsel was entitled to reimbursement of all litigation related expenses including expenses concerning document productions, experts, consultants and travel.)

[19] *See also Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee *paying client.") (citation omitted); see also New England Health Care Employees Pension Fund v. Fruit* of *the Loom, Inc.,* 234 F.R.D. 627, *635* (W.D. Ky. 2006) ("In determining whether the requested expenses are compensable, the Court has considered 'whether the particular costs are the type routinely billed by attorneys to paying clients in similar cases.'") (citation omitted).

the Non-Settling Defendants), and expenses in the amount of $20,555.88, plus interest

on both at the same rate as earned by the Settlement Fund.

**Dated:** April 4, 2011                   Respectfully submitted,

<div style="margin-left:40%">

/s/ S. Ranchor Harris, III
S. Ranchor Harris, III (Bar # 21022)
100 N. Cherry Street
Winston-Salem, NC 27101-4016
Tel: 336-721-1001
Facsimile: 336-748-9112
*Liaison Counsel for Lead Plaintiff and the
Class*

**BROWER PIVEN**
  **A Professional Corporation**
David A.P. Brower
488 Madison Avenue, 8th Floor
New York, New York 10022
Tel: 212-501-9000
Fax: 212-501-0300

**KAHN SWICK & FOTI, LLC**
Lewis S. Kahn
206 Covington Street
Madisonville, Louisiana 70447
Tel: 504-455-1400
Fax: 504-455-1498

*Lead Counsel for Lead Plaintiff and the
Class*

</div>

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that this **MEMORANDUM IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES** was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants on April 5, 2011.

.

<div align="right">

*/s/ S. Ranchor Harris, III*
S. Ranchor Harris, III (Bar # 21022)

</div>