IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |  |
|---|---|---|
| MARY JANE BEAUREGARD, On Behalf of Herself and All Other Similarly Situated | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:07CV785 |
| SMART ONLINE, INC., et al | ) ) | |
| Defendants. | ) | |

**ORDER**

Presently before this court is Federman & Sherwood's Motion for Attorneys' Fees and Expense Reimbursement ("F&S's Motion for Attorneys' Fees") (Doc. 69). Federman & Sherwood ("F&S" or "Non-Lead Counsel") filed a supportive brief (Doc. 70), and Lead Plaintiff Mary Jane Beauregard ("Lead Plaintiff Beauregard") filed a response opposing F&S's motion (Doc. 80). F&S then filed a reply brief (Doc. 86), and Lead Plaintiff subsequently filed a surreply (Doc. 100). On May 11, 2011, this court heard argument from the parties concerning, inter alia, F&S's Motion for Attorney's Fees. This motion is now ripe for decision from this court. Having carefully considered the relevant pleadings and the parties' arguments, this court will deny F&S's motion.

## I. BACKGROUND

This action arises from the Defendants' allegedly "fraudulent and illegal scheme to manipulate artificially the public securities market for Smart Online stock by . . . paying and accepting bribes and other illegal consideration to solicited investors to purchase [Smart Online] securities for the purpose of creating the false appearance of a larger market interest in [Smart Online] and thereby fraudulently induc[ing] investors into buying Smart Online stock." (Am. Compl. (Doc. 32) ¶ 2.) On September 11, 2007, prior to the filing of this action, the United States Securities and Exchange Commission ("SEC") filed an injunctive complaint against Defendants Smart Online, Inc. ("Smart Online"), Dennis Michael Nouri ("Michael Nouri"), Reeza Eric Nouri ("Eric Nouri"), Anthony Martin, James Doolan, Ruben Serrano, and Alain Lustig in the United States District Court for the Southern District of New York. (Id. ¶ 11.) That same day, Defendants Michael Nouri, Eric Nouri, Ruben Serrano, Anthony Martin, James Doolan, and Alain Lustig were arrested and charged with federal securities fraud and conspiracy to commit securities fraud. (Id.)

On October 18, 2007, Plaintiff Robyn L. Gooden filed the original civil class action complaint against Defendants Smart Online, Michael Nouri, Eric Nouri, Henri Nouri ("Henri Nouri"), Jeffery W. LeRose ("LeRose") Thomas P. Furr ("Furr"), Maxim

2

Group, LLC ("Maxim Group"), and Jesup & Lamont Securities Corp. ("Jesup & Lamont"). (See generally Compl. (Doc. 2).) Throughout the course of this action, Plaintiff Gooden has been represented by F&S, in addition to local counsel Guy W. Crabtree of Pulley, Watson, King & Lischer, P.A. (See generally id. at 22.) Plaintiff Gooden's complaint represented that the facts therein "were obtained through an extensive investigation made by and through her attorneys." (Id. at 1.) According to Plaintiff Gooden's complaint,

> "Plaintiff's Counsel's investigation . . . included, among other things, a review of: (i) public filings made by Smart Online, Inc. . . . with the [SEC]; (ii) press releases and other public statements issued by [Smart Online]; (iii) published reports and news articles regarding [Smart Online]; and (iv) pleadings and the consent judgment entered against Defendant [Smart Online] in Securities and Exchange Commission v. Smart Online, Inc., et. al., Civil Action No. 07-7960; in the United States District Court for the Southern District of New York."

(Id.) Plaintiff Gooden's complaint contained only one count, alleging a "violation of Section 10(b) of the Exchange Act and Rule 10b-5 against all defendants" (Id. at 17.) On the same day that the initial complaint was filed, F&S also published the first notice of the class action on Market Wire pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), advising potential members of the Class of their right to move the court to serve as lead plaintiff

3

for the Class no later than December 17, 2007.  (See Federman Decl., Dec. 16, 2007, Ex. C (Doc. 16-8) at 2.)

On December 17, 2007, Plaintiffs George S. Allen, Leon Reese, and Thomas L. Wylie, by and through their counsel F&S and Guy W. Crabtree, moved to be appointed co-lead plaintiffs.  (See Doc. 15.)  The same day, Plaintiff Mary Jane Beauregard also moved to be appointed lead plaintiff.  (See Doc. 17.)  On June 24, 2008, this court consolidated all future related actions and appointed Mary Jane Beauregard as lead plaintiff for the Class. (Order, June 24, 2008 (Doc. 30) at 1.)  This court also approved Lead Plaintiff's selection of the law firms Kahn Gauthier Swick, LLC, and Brower Piven, A Professional Corporation as Lead Counsel for the Class, and S. Ranchor Harris, III as Liason Counsel. (Id. at 2.)

Lead Counsel subsequently filed a 110-page amended complaint on September 8, 2008, which set forth five counts and named numerous additional defendants, including Defendant Sherb & Co., LLP and the broker defendants, Ruben Serrano, Alain Lustig, Anthony Martin, and James Doolan.  (See generally Am. Compl. (Doc. 32); see also Lead Pl.'s Mem. Opp. F&S's Mot. Attys' Fees [hereinafter "Lead Pl.'s Response"] (Doc. 80) at 4-5.)  On June 21, 2010, Lead Plaintiff Beauregard, on behalf of herself and Members of the Settlement Class, along with the Settling

4

Defendants[1], filed a Stipulation and Agreement of Partial Class Settlement (Doc. 61).

After trying unsuccessfully to seek reimbursement from Lead Counsel, F&S moved this court for an award of attorneys' fees in the amount of $110,572.68 pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure. (See F&S Mot. Attys' Fees (Doc. 69) at 1.)  The amount requested represents F&S's total lodestar amount plus unreimbursed expenses for the time period beginning with the inception of the case through June 24, 2008, the date this court appointed Lead Plaintiff and approved Lead Plaintiff's selection of Lead Counsel.  (Br. Supp. F&S's Mot. Attys' Fees, Ex. A (Doc. 70-1) at 2.)  F&S contends that it conferred a substantial benefit on the Class because it "bore the burden of conducting initial research, drafting the complaint, publishing notification of the action, and litigating the case [prior to the appointment of Lead Plaintiff]."  (Br. Supp. F&S's Mot. Attys' Fees (Doc. 70) at 5.)

## II.  ANALYSIS

Although F&S included figures representing its lodestar amounts and expenses incurred <u>after</u> the appointment of Lead

---

[1]According to the Stipulation and Agreement of Partial Class Settlement (Doc. 61), the term "Settling Defendants" refers to "Smart Online and collectively the following Defendants: Maxim Group, the Nouri Defendants, [Nicholas A.] Sinigaglia, [Scott] Whitaker, [David E. Y.] Sarna, [Frank] Coll, Elia, [James] Meese, [Philippe] Pouponnot, Lerose, and Furr."  (Stipulation & Agreement Partial Settlement (Doc. 61) at 9.)

5

Counsel in the exhibit handed up at the May 11, 2011 hearing before this court (May 11, 2011 Hr'g, Ct. Ex. 3.), F&S's pleadings make it clear that it only requests compensation for its efforts prior to the court's appointment of Lead Plaintiff and approval of Lead Plaintiff's selection of Lead Counsel.  (See Br. Supp. F&S's Mot. Atty's Fees (Doc. 70) at 8-9 ("The fee Federman & Sherwood is requesting is modest, amounting to only their billable time and expenses up to the appointment of Co-Lead Counsel, which totals $110,572.68.").)  Therefore, this Order considers only whether F&S is entitled to compensation for its work during the time period <u>prior to</u> the appointment of Lead Plaintiff.[2]

In deciding "who is entitled to attorneys' fees for pre-appointment work, the court's only consideration must be whether or not the attorney's work provided benefits to the class."  <u>In re Cendant Corp. Sec. Litig.</u>, 404 F.3d 173, 197 (3d Cir. 2005) [hereinafter "<u>Cendant II</u>"].  <u>Cendant II</u> is the seminal circuit

---

[2] Nevertheless, this court notes that any attempt by F&S to seek compensation for work performed after the appointment of Lead Plaintiff Beauregard would likely be futile under the standards set forth in <u>In re Cendant Corp. Sec. Litig.</u>, 404 F.3d 173 (3d Cir. 2005) [hereinafter "<u>Cendant II</u>"].  As noted by the Third Circuit in <u>Cendant II</u>, once lead plaintiff is appointed, "the primary responsibility for compensation shifts from the court to . . . lead plaintiff."  <u>Id.</u> at 197.  Therefore, if F&S had sought compensation for work performed after the appointment of Lead Plaintiff Beauregard, this court would be required to "accord a presumption of correctness to lead plaintiff's decision that such an attorney is not entitled to fees."  <u>Id.</u> at 199.

6

court decision concerning the compensation of non-lead counsel in class action lawsuits under the Private Securities Litigation Reform Act ("PSLRA"). The Cendant II court held that the common fund doctrine governs compensation of non-class counsel during the time period leading up to the appointment of lead plaintiff. Id. at 193-95. Under the common fund doctrine, "'a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'" Id. at 187 (quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 820 n. 39 (3d Cir. 1995) [hereinafter "In re GMC"]).

In reaching its decision, the Cendant II court noted that the pre-appointment period "can be of significant importance" because:

> before lead plaintiff is appointed, counsel may discover possible fraud at the issuer, investigate that possible fraud, determine whether it warrants filing of a complaint, make strategic decisions about the form and content of the complaint, file it, issue notice to class members, and navigate the PSLRA's lead-plaintiff selection procedures.

Id. at 193-94. Nevertheless, the Third Circuit recognized that "[t]he dominant paradigm in securities class actions is probably not careful investigation to discover hidden abuses, but rapid

7

filing in response to abuses publicized by regulators, the media, or the issuer itself." Id. at 194.

Recognizing the tension between the race to the courthouse reality of most securities class actions and the possibility that "unfair and arbitrary fee decisions" might result if compensation for pre-appointment work was left "solely [to] the whim of the lead plaintiff," the Third Circuit concluded that "the court's involvement in the fee decision will be at its height when the fee request is for work performed before the appointment of the lead plaintiff." Id. at 194-95. Consequently, "[t]he court, not the lead plaintiff, must decide for itself what firms deserve compensation for work done on behalf of the class prior to the appointment of the lead plaintiff." Id. at 195 (noting, however, that the court may give "substantial deference to the lead plaintiff's decision about what work conferred such benefits").

The key factor in determining whether to compensate non-lead counsel for pre-appointment work is whether non-lead counsel "create[d] a substantial benefit for the class" during that period, "for example, [by] discovering wrongdoing through his or her own investigation, or by developing legal theories that are ultimately used by lead counsel in prosecuting the class action." Id. at 195. Generally, "the mere filing of complaints in a securities class action" does not confer a substantial benefit on the class. Id. at 196; see also Victor v. Argent Classic

8

Convertible Arbitrage Fund L.P., 623 F.3d 82, 87 (2d Cir. 2010) ("[N]on-lead counsel is not automatically entitled to an award from a common fund each time one of its claims is utilized in the complaint that lead counsel ultimately files."); In re Adelphia Commc'ns Corp. Secs. & Derivative Litig., 2008 WL 4128702, at *3 (S.D.N.Y. 2008) ("[T]he filing of a complaint, without more, is not fee-worthy."); In re Tut Systems, Inc. Sec. Litig., 2007 WL 1722420 (N.D. Cal. 2007) ("Simply filing a securities fraud complaint rarely warrants compensation."); In re Auction Houses Antitrust Litig., 2001 U.S. Dist. LEXIS 1989, at *12 (S.D.N.Y. 2001) ("Certainly the mere filing of complaints did not benefit the class."). In Victor, the Second Circuit also noted that "many complaints filed by potential lead counsel rely on fairly routine legal analysis rather than on inventive legal theories, and are based on publicly reported information or disclosures rather than on intensive fact-finding." 623 F.3d at 87. The Second Circuit concluded that "non-lead counsel is not entitled to significant compensation if it merely 'advance[d] a legal theory that is apparent to all lawyers involved.'" Id. (alteration in original) (quoting Cendant II, 404 F.3d at 205.)

Although the Cendant II court held that class action complaints should generally be viewed as "entrepreneurial efforts" due to the "relative ease with which plaintiffs' attorneys can learn of potential securities fraud, and the speed

9

with which they can translate that information into a complaint," the Third Circuit did make allowance for non-lead counsel "who alone discover grounds for a suit, based on their own investigation rather than on public reports." Id. at 195-97. In that case, non-lead counsel "legitimately create a benefit for the class" and "should generally be compensated out of the class's recovery, even if the lead plaintiff does not choose them to represent the class." Id. at 197.

F&S has failed to demonstrate that it conferred a substantial benefit on the Class. First, F&S has failed to offer anything more than conclusory allegations concerning its investigative efforts on behalf of the Class. F&S has not produced any evidence to show, nor has it even alleged, that it "discover[ed] [the] wrongdoing" that forms the basis of this class action. Id. at 195. In fact, F&S's complaint indicates that its investigation was based primarily, if not exclusively, on public information. (See Compl. (Doc. 2) at 1 (noting that F&S's investigation included a review of Smart Online's public filings with the SEC, Smart Online's press releases and other public statements, published reports and news articles about Smart Online, and pleadings and the consent judgment issued in the SEC lawsuit against Smart Online).) F&S's pleadings allege that it spent 200.65 hours litigating the case and incurred $3,368.93 in expenses prior to this court's Order appointing Lead

10

Plaintiff, but F&S does not provide any detail about the specific tasks it performed and how those tasks resulted in a substantial benefit for the class. (Br. Supp. F&S's Mot. Attys' Fees, Ex. A (Doc. 70-1) at 2.) See Auction Houses, 2001 U.S. Dist. LEXIS 1989, at *12 ("Many of the applications [for compensation by non-lead counsel] do not adequately explain what work was done or how it allegedly benefitted the class. Certainly the mere filing of complaints did not benefit the class.").

Like F&S, one of the appellant firms in Cendant II, Finkelstein, Thompson & Loughram, admitted in its brief that its "role in this litigation was confined almost entirely to pre-filing investigation and drafting, monitoring and client communications." 404 F.3d at 204. (See F&S's Reply (Doc. 86) at 3 ("F&S conducted the initial research into the propriety of bringing a class action suit, gathered relevant information, provided detailed information in F&S's Complaint. . . and tied that information to specific securities violations that were later adopted by [Lead Plaintiff].").) The Third Circuit held that such activities are "not compensable," in part, because the allegations contained in Finkelstein, Thompson, & Loughram's complaint "were based essentially on Cendant's own public announcements." Cendant II, 404 F.3d at 204.

Perhaps, even more similar to F&S, another appellant firm in Cendant II, Wolf Haldenstein, was the first and only firm to file

11

an initial complaint on behalf of one particular subset of plaintiffs in the class action. Id. at 205. Wolf Haldenstein argued that it should be compensated, despite not being appointed lead counsel, because by being the first firm to file a claim on behalf of that subset of plaintiffs, it in a sense "'discovered'" the common fund as to those plaintiffs. Id. (citing In re GMC, 55 F.3d at 820 n.39). The Third Circuit refused to compensate Wolf Haldenstein for their pre-appointment work, reasoning that

> 'discovery' [of a common fund] is only compensable if it is a true discovery: if the attorney's investigation uncovers facts, or leads to legal theories, that benefit the class independently of work done by other counsel. Simply being the first to allege facts that appear in the newspapers, or to advance a legal theory that is apparent to all lawyers involved, will not in itself be enough to warrant compensation.

Id.

F&S has failed to show that its complaint advanced a legal theory other than one that would have been readily apparent to all of the parties involved. See Victor, 623 F.3d at 87. In Victor, the Second Circuit noted that "[a] qualitative comparison between non-lead and lead counsels' work products is certainly appropriate when determining whether non-lead counsel has provided a substantial benefit to the class." Id. at 88. The Second Circuit gave the specific example of "comparing the complaint filed by non-lead counsel with other complaints filed in the action, including the complaint filed by lead counsel," in

12

order to determine "whether non-lead counsel contributed important factual information or innovative or novel legal theories." Id. Although this court recognizes that Lead Counsel did not file its complaint until after the appointment Lead Plaintiff and the consolidation of all future actions, this court nevertheless finds that a qualitative comparison between F&S's Original Complaint and Lead Counsel's Amended Complaint leads this court to conclude based on this record that Non-Lead Counsel has not contributed important factual information or innovative or novel legal theories as suggested by Victor.

Finally, although the ultimate decision as to whether F&S conferred a benefit on the Class is left up to the court, this court is entitled to give "substantial deference to the lead plaintiff's decision about what work conferred [a substantial benefit]" on the Class. Cendant II, 404 F.3d. at 195. This court notes Lead Plaintiff Beauregard's position that F&S's complaint and other pre-appointment efforts did not benefit the class. (See generally Lead Pl.'s Response (Doc. 80); Lead Pl.'s Reply (Doc. 100).)

## III. CONCLUSION

For the reasons set forth herein, F&S's Motion for Attorneys' Fees and Expense Reimbursement (Doc. 69) is DENIED.

This the 6th day of June 2011.

                                       /s/ William L. Osteen, Jr.
                                       United States District Judge